Good morning. My name is Michael Kaiser. I'm with the Lassiter and Cassinelli firm in Little Rock, Arkansas, and I represent Appellant Mujera Lung'aho today. May it please the court. In September of 2020, Appellant Lung'aho was charged with setting fire to three police cars during the turbulent summer of 2020 following the killing of George Floyd by state police officers. These three police cars are owned by local and state police agencies, who receive meager federal financing at best, and no federal funds were actually used in any way to purchase, service, or deal with the cars at all. Despite arson being a quote, paradigmatic common law state crime, Lung'aho was charged in federal court for arson of these state vehicles. Today this court must decide whether 18 U.S.C. 844 subsection F is rationally related to the efficacious expenditure of federal funds in this case. This court must and should find that it does not. Unlike the bribery statute at issue in the Sabry case decided by this court and affirmed by the Supreme Court of the United States, the arson statute at issue here is not self-limiting in any way. It has no numerical threshold in terms of the amount of damage caused, no numerical threshold in terms of the federal assistance that the agency at issue receives, and unlike the statute in Sabry, this statute has nothing to do with the federal spending power. While the power to keep a watchful eye on expenditures and the reliability of those who use public money is bound up with congressional authority to spend in the first place, the power to federally criminalize arson of purely state vehicles is not. I think, you know, you gave the example, I believe, in the briefs of being in a police station, throwing a cigarette into a trash can that happens to be lit, and then it lights the trash, you know, a $5 trash can on fire. I think I actually agree with you that that probably goes too far because it gets nowhere near the threshold, but here we're talking about $80,000 worth of damage is my understanding, and we're also talking about a situation in which there was a significant amount of federal funding. There wasn't a dollar. So when you're talking as an as-applied challenge, we may sustain the as-applied challenge for the $1 federal funding and the trash can burning, but it's much harder to do when you're talking about $80,000 and, you know, tens of thousands of dollars given to the federal government, from the federal government to these police forces. Can you address that point? Judge, if I may step over, I just have those actual figures right here. Sure. I can't deny that $80,000 in an absolute sense is a lot. It would hurt me personally, but given these three agencies and the budgets involved, it is chump change. We're talking the Arkansas State Police, a budget of over $100 million annually, and we're talking two local police agencies, I believe $80 million annually for the Little Rock Police Department, $24 million annually for the North Little Rock Police Department, and we're talking about North Little Rock, for example, receiving $40,000 a year in COVID assistance for the period at issue in 2020. So these are paltry sums. These are meagerly federally funded agencies. These are local and state police agencies. That could have been true, though, in SABRI or SABRI as well, because the thresholds are what, only $5,000 and $10,000 or whatever? $5,000 in the bribe, $10,000 in assistance. So conceivably, if you were bribing a state agency of this sort, you could still sustain the conviction based on the fact that $5,000 is enough. If we were dealing with bribery, yes, Your Honor, and that statute has that jurisdictional provision with those numerical thresholds, but bribery is different than burning up a police car. There is an inherent tie to the federal spending power with bribery of officials who deal with dispersing that federal money that comes into their agency. I don't know how the government is going to say there is a federal interest in the attempted or burning of a state or local police cruiser that has no federal funding tied to it in any way. Suppose it was earmarked, still the same amount of money, but it was earmarked towards police vehicles, the federal funding. Does that change things? It totally would. I think the court would have sustained the application under the property clause, but that's not what we're here for today. I think the court correctly found that the property clause could not sustain application of this statute to the property at issue here. We're focused just on the spending power through the necessary and proper clause. But in that example, yeah, I think it would be a pretty straightforward application of the property clause. But what if the money wasn't spent on those particular vehicles? So they earmarked it, but those went to, let's say, heavy vehicles, Bearcats, I don't know, they have them in St. Louis, but the big vehicles, not police vehicles. And it so happens that your client takes out a couple of police vehicles that are not the ones federally funded. So you're saying, I guess, if somebody misappropriated the funds after receiving them? Not misappropriated. It's for police vehicles, and they just decided to use it on heavy tank-like vehicles versus regular police patrol cars. Thankfully, Your Honor, we're not asked to answer that question today. I do think there would be a stronger argument that the property clause would sustain that. I'm sure if I was on that case, I'd be arguing, no, it doesn't, because it didn't touch the actually federally funded vehicles. But here, there's no such concern like that. These are, by stipulation at the district court level, these are purely state police vehicles that not even items inside the cars were purchased using federal money. For example, if the radios or the shotgun in each car had been purchased with some federal grant, again, I don't think we would be standing here. Interpreting 844F in the manner that the government is advocating for and that the district court found will displace policy choices made by states, even when Congress has the undoubted power to preempt local law, our Supreme Court has said that unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal state balance. Application of this law in this case does just that. And looking at the legislative intent from 1970, Congress was very clear, it is not the intention of this statute that the federal government substitute for the enforcement activities of state and local authorities. Expressed provision is made that this statute shall not be construed as preempting state law or depriving state or local law enforcement of its responsibilities for investigating and prosecuting crimes involving the use of explosives. But that is what the government is asking the court to uphold here. This statute is unconstitutional in this case because Lunajo's conduct falls outside the scope of Congress's Article I authority. The Necessary and Proper Clause does not confer upon Congress a broad police power, but that is in essence what the government is arguing here. Again, unlike the bribery statute we are talking about in the Sabry case, this statute is not a law, this does not prevent the use of explosives. In response, I am going to quote the United States Supreme Court in Sabry, money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar for dollar value. Liquidity is not a financial term for nothing. Money can be drained off here because a federal grant is pouring in there and officials are not any less threatening to the objects behind federal spending just because they may accept general retainers. So the bribery statute, even if we are dealing with the Sabry case, it was a bribery of a local official in charge of an agency who distributed federal money. It wasn't a Congress person, it wasn't even a state rep, but that person by virtue of that position was dealing with federal money. They were essentially an intermediary in Congress's spending power. We don't have that here. This court and the United States Supreme Court in the Sabry case focused heavily on the legislative history of the bribery statute, but they also focused on the statute itself, that it was self-limiting, that it had those threshold requirements that although a nexus need not be proven in each individual case, the statute itself created that nexus with those threshold requirements. We don't have that here. A single dollar would be enough. Were the court to affirm, this will disrupt the federal-state balance in the prosecution of the paradigmatically common-law state crime of arson. The Constitution requires a distinction between what is truly national and what is truly local, and the regulation and punishment of intrastate crime and violence that is not directed at federal instrumentalities has always been the province of the states. Your Honors, if there is no additional questions at this point, I will reserve the remainder of my time for rebuttal. All right. Very good. Thank you, Counselor. Thank you, sirs. Mr. Webster, when you are ready, you may proceed. Thank you, Your Honor. May it please the Court. My name is John Webster, and I'm here today representing the United States Constitutional Court. I'm here to speak on the Federal Circuit's ruling in 18 U.S.C. 844 F.1. over 50 years ago. In that time, the Federal Circuit's to have considered the constitutionality of the statute have held that it was constitutional, and only the First Circuit applied it in a manner other than its clear, unambiguous language that authority on this issue in the circuit. There is not, Your Honor. However, there is, I think, helpful authority, as the Court has recognized in the Sabry case, because there you're also dealing with a statute that applies to entities receiving federal funds. It seems to be the most helpful case. Yes, sir. Aren't we talking apples and oranges here, bribery versus use of fire? No, not in the context of an as-applied challenge, Your Honor. I don't believe so. Well, wasn't Sabry a facial challenge? Sabry was a facial challenge. I mean, it's apples and oranges in the sense that one's facial, one's as-applied. But I think it's, if anything, upholding Sabry against a facial challenge supports upholding this statute in this as-applied challenge. I mean, I think it makes doing that even a stronger case. I think maybe the more pertinent analysis, I guess, is whether bribery is fundamentally different because of its tendency to infect the whole process. Well, I don't think bribery is fundamentally different. I mean, bribery is sort of, can be pernicious. However, here with this statute, I mean, the actual harm to the entity with regard to bribery is somewhat more theoretical than it is in the application of 844F in this case, where you actually burned the property of an entity receiving federal funds, which means there was actual, you know, definable harm to that entity and, you know, financial loss. But how is the appropriation of, the appropriation power of Congress undermined since the vehicles were not purchased with federal funds? Here the appropriation powers undermine, Your Honor, because as, you know, the Supreme, as this Court recognized in Sabry and the Supreme Court recognized in Sabry, money's fungible. Government budgets are limited. If you're, you know, incurring a cost over here due to loss, due to fire, you know, use of explosives, you don't have that money to use over here for, you know, another purpose. I think that's very true, but we seem to be dealing with very de minimis, almost minuscule amounts of federal funding here. What if it was $1? Would the same analysis apply? I mean, I do think, Your Honor, in the context of an as-applied challenge, we might be in a different place with $1. But here, you know, as Judge Strauss recognized, we have, you know, $86,000 worth of damage. What if we dealt in percentages rather than dollars? Aren't we still, I think one of them was .001%. Well, you know, I don't believe it would be appropriate to consider percentages, Your Honor, because, again, in Sobre, with 666, you look at that and you say, you know, a $5,000 bribe and a $10,000, you know, federal appropriation is sufficient, whereas here you have, you know, several times that amount. So I don't think the percentages really come into play. And it's also, I think, important to keep in mind the interest involved here. This particular case involves destruction of police vehicles. I wanted to ask you about that as well. You argue, I believe in your brief, that law enforcement by a state agency is a federal interest. Is that a fair? Yes, the federal, I'm sorry, Your Honor. Why isn't that just another way of claiming police power for the federal government, which I thought the Supreme Court said they couldn't do? It's not claiming police power, Your Honor, because what we're saying is that the federal government has an interest in promoting the law enforcement activities of state and local law enforcement officials because many times, you know, as I've seen in our office, you have, you know, violations of federal law that are detected and investigated by state and local agencies, you know, who the department refers to as partners. Do you understand my concern, though? Because it just seems like we're engaging in a semantical game where the federal government cannot claim police power, and yet it seems that they are. Well, Your Honor, I understand your concern. It seems we keep federalizing what are state crimes. Well, I think here, again, it's only federalized to the extent there's a federal interest as demonstrated by the giving of federal funds. I mean, here it's not something where we're saying, you know, any destruction of police vehicles anywhere in the country is now a federal crime. We're saying destruction of police equipment when that entity has received federal funds. So let's go back then to where is the limiting principle. You said maybe not $1. So where is the, what's the limiting principle here if it's not $1? I wouldn't, I mean, I wouldn't know that exactly, Your Honor, but I think, you know, even if you make reference to section 666, and you say that's, you know, limiting, you know, with the $5,000 and the $10,000, here when you're dealing with an as-applied challenge, which we are, he, you know, this far exceeds, this interest far exceeds that, which was, you know, held to be constitutional. What if it's, what if it's, what if they give $100,000 to the police force, but it's the trash can example? The trash can costs $5. I mean, I think, you know, it's possible that would be, you know, different. Of course, you don't know in that instance. You know, you light a trash can, well, did it, you know, set off the sprinklers and destroy, you know. They came over, they sprayed it with the fire extinguisher, and it didn't cause any other damage. Well, and that, you know, we'd be in a very different position, Your Honor. I would agree if that had happened in this case, but it didn't. Here, you know, like I said, again, in the context of an as-applied challenge, we're looking at what happened here, and what happened here was not a trash can. It was, you know, burning up two police vehicles and causing tens of thousands of dollars of damage. And again, you know, as Your Honor pointed out, you know, the percentages, the amount of funds is really not relevant, particularly to the statute that's written. Well, again, I'm sorry to harp on this, but that's not relevant. Why isn't $1 relevant? Well, it's not relevant in the context of an as-applied challenge, Your Honor. You know, if this were a facial challenge, maybe we're in a different position. But this is an as-applied challenge, and I think in that context, it very much, you know, makes a difference that here you're dealing with the actual figures, and here's the actual damage that you're dealing with. And again, you know, to the extent that Mr. Longaho is, you know, claiming this is going to disrupt, you know, the federal-state, you know, balance on the arson, I mean, it, you know, the statute creates concurrent jurisdiction. You know, states still have the authority and the ability to punish arson offenses. This simply, you know, creates a federal offense only in those classes of cases where you have a federal interest as. . . Well, if part of the basis for saying the as-applied challenge fails is because the mode of property damage here is arson, how is that different than the position that was rejected in Jones? It's different from the position that's rejected in Jones, Your Honor, because again, looking at it as-applied, in Jones, the Supreme Court looked and said, you know, there's just not enough connection, you know, to interstate commerce with a private residence. Here, when you're looking under the spending power, Congress has given, you know, that money, and here in this case, you have actual damage that's caused, you know, for these agencies to incur costs that will have to be, you know, paid for. And, you know, I think it's just when you look at the spending clause, you know, this court has recognized, you know, that it's an expansive authority, particularly in conjunction with a necessary and proper clause, and is, you know, as broad as Congress's regulatory authority in its own sphere. So I think, you know, the difference with Jones is you're dealing with, you know, an interstate commerce issue where the court says there's no tie to interstate commerce, whereas here you're dealing with a spending clause issue in conjunction with the necessary and proper clause, and Congress has given the money. Congress has, you know, spent the money, and it has a right to police, you know, to use or at least, you know, to work to prevent the abuse of those funds and then them being dissipated through loss of property due to arson or use of explosives. And if the court has no further questions, the United States respectfully requests that the order of the district court be affirmed. Thank you. Thank you, counsel. Mr. Kaiser, your rebuttal. Yes, Your Honor. So I appreciate this court's questioning essentially asking where is the line. And from the briefing, from the United States District Court, and even here today and on appeal, the government doesn't seem to be able to articulate one. When the district court actually asked the government at the trial level what distinguished a federal crime from a state crime for an agency that receives $1, the prosecutor, the United States really didn't have a response other than the federal interest and that prosecutorial discretion would be the deciding factor. I just want to point out to the court that this case was not one that was, quote, picked up from the state. This case was filed initially in the federal court. And I think this case provides kind of a prime example of why we should not interrupt the federal-state balance in the prosecution of arson. Well, it does have some pretty bad facts.  Yes, and it occurred during a turbulent time in this nation's history. But I think that's exactly the concern of the Hurson Court and just interpretive canon generally against construing statutes to have, you know, a significant effect altering the federal-state balance. Now what appears to be the deciding factor in making an otherwise state arson federal is when it may have occurred and perhaps the politics behind it. And that's exactly the reason we need to preserve this balance. As the Supreme Court announced in Jones, arson is a paradigmatic common-law state crime. As the Court's ruling in Jones made clear, some arsons are supposed to be state crimes only. It's our assertion that under this subsection of 844F rather than the interstate commerce one, this is one of those. This is a state crime. To affirm the district court would transform this traditionally local conduct into a matter for federal enforcement. And again, there was no legislative intent to interrupt this federal-state balance regarding arson. In fact, the legislative intent was to protect the federal government's property but specifically not to disrupt this balance and to leave the states, to leave their power to prosecute and investigate arson and explosive-based crimes. It's really difficult to square a system of limited federal government as mandated by our Constitution with what amounts to the mass federalization of the crime of arson of public property. To find that this is a proper application of 844F in this case would transform a broad swath of traditionally local criminal conduct into a matter for the federal government. It's an improper extension of federal power to hold that if an organization receives any, even a cent, a dollar of federal funding, even a meager portion that has nothing to do with the property at issue as here, that the federal government may then choose to prosecute whether or not those federal funds have been or are implicated in any way. Again, coming back to SABRI, Congress has authority under the Spending Clause to appropriate federal monies to promote general welfare and the corresponding authority under the Necessary and Proper Clause to see to it that those taxpayer dollars appropriated under that power are in fact spent for the general welfare and not furthered away in graft or on projects undermined when funds are siphoned off or corrupt public officials are derelict about demanding value for dollars. But it does not have the authority to see to it that agencies receiving any amount of funding lose any property that may or may not have any tie to the federal money at issue. The arson statute is not an anti-corruption mechanism like the bribery statute or the several other bribery statutes that we dealt with in briefing in SABRI and the Sahel case. The expansive reach of the government's and the district court's interpretation here infringes on the state's sovereignty with regard to their exercise of the state police power, the most basic of which is enactment enforcement of criminal sanctions for conduct that occurs solely in that state. This case is the perfect example of why this balance needs to be maintained lest the timing or politics associated with the offense become the determinant in whether it is federal versus state as opposed to an actual legitimate federal interest. The district court erred by denying Mr. Lenato's motion to dismiss the arson and conspiracy to commit arson counts and its ruling has the effect of improperly federalizing a paradigmatically common law state offense. This court must reverse accordingly. Thank you for your time. Thank you, counsel. The court also notes, Mr. Kaiser, that you were appointed pursuant to the Criminal Justice Act to represent Mr. Lunaho and the court appreciates your service. Thank you, your honor. The case is submitted and the court will issue an opinion in due course.